UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES

VS.                                  No. 04-10336-NMG

JULIO SANTIAGO et al.

## MEMORANDUM IN SUPPORT OF
## MOTION TO SUPPRESS

On October 14, 2004 a United States Magistrate Judge found that Julio Carrion Santiago and others had conspired both, to possess with intent to distribute and to distribute 100 grams or more of a mixture containing a detectible amount of heroin. The Magistrate Judge also found that evidence of the commission of these criminal offenses, contraband, the fruits of crime, things otherwise criminally possessed and property designed and intended for use or which had been used as the means of committing a criminal offense would be found, at among other places, 264 mechanic Street, 2nd floor, Leominster Massachusetts.

The Magistrate-Judge's conclusion was based upon the assertions of Calice Couchman who is a 19 year special agent of the D.E.A. Couchman, it is conceded, has training and experience that make her capable of identifying the manner in which narcotic traffickers use vehicles, common carriers, mail and private delivery services, and a variety of other means to transport and distribute narcotics; and to some extent, how narcotics traffickers use telephones, slang filled telephone conversations, pagers, coded pager messages and other means to facilitate illegal activities.

**In the affidavit, agent Couchman, notes:**

1. That Julio Santiago resides at 264 Mechanic Street, 2nd Floor, Leominster, MA.

    2.    That Julio Santiago is the user of 3 target telephones, with no subscriber information, and a pager, owned by a person other than the defendant,

and then concluded that based on intercepted calls to target telephones used by the defendant, intercepted pages to the pager and physical surveillance of the defendant and a GPS tracking of his van, that the defendant met with drug customers and then returned to his home.

**The support for the assertions about the defendants' use of his home for narcotics trafficking are:**

Pg. 5    Surveillance have observed that on several occasions Santiago used Tavo's 212 Wilder Street Lowell residence as a place to meet with some drug customers and deliver heroin that intercepted calls had indicated that had been ordered from Santiago.

Pg. 6    Surveillance at this location (Old English Village Apt. Complex) on July 9th, 2003 confirmed that Rivera met with the operator of the Santiago minivan and engaged in a hand to hand exchange with the operator of Santiago's minivan.

Pg. 7    Based upon intercepted calls between Agosto and Santiago, intercepted pages to the target pager and surveillance, there is probable cause to believe that Agosto is a heroin customer who has purchased distribution quantities of heroin from Santiago.

Pg. 8    Based upon intercepted calls between Torrado and Santiago, intercepted pages to the target pager and surveillance, there is probable cause to believe that Torrado is a heroin customer who has purchased distribution quantities of heroin from Santiago.

Pg. 8    Based on intercepted conversations with Santiago and intercepted pages to the target telephone and surveillance, there is probable cause to believe that Sanchez is a heroin customer of Santiago's who has purchased distribute quantities heroin from Santiago.

Pg. 8    Based on intercepted conversations with Santiago, intercepted pages to the target pager and surveillance, there is probable cause to believe that Pito is a heroin customer of Santiago's who has purchased distribution quantities of heroin from Santiago.

Pg. 9    Based on intercepted conversations with Santiago and surveillance, there is probable cause to believe that Torrez is a heroin customer of Santiago's who has purchased distribute quantities of heroin from Santiago.

The affidavit in section II assembles facts to establish probable cause for criminal complaints for *the target subjects*.

In the section entitled "Interception of Target Telephone Used by Santiago" the affiant relates a conversation in which she translates Santiago's telephone statement that he was going to take sixty (60) dollars out of the bank to mean that Rodriguez still wanted to purchase 60 units of heroin. (Pg. 22) A surveillance of Santiago's home at 264 Mechanic Street at 2:30 P.M. on June 6, 2004, established no more that that the defendant left his home. At 4:10 P.M. a surveillance agent saw Santiago's minivan pass by Rodriguez's residence at 261 Aiken Avenue in Lowell, and then saw Santiago enter the premises. At 6:40 P.M. Rodriguez was arrested walking on Aiken Avenue with a bag of heroin.

On July 7, 2003, Santiago was intercepted speaking to Rivera about a recorder CD. Santiago was seen on that day placing an item inside a vehicle which was registered to Rivera. The surveillance agent opened the vehicle and found and retrieved two packages each of which contained 10 grams of heroin.

### The affidavit lists the following information:

- Santiago's Continued Heroin Transactions with Rivera.
  Paragraph 64-65

- Heroin Deliveries from Santiago to Pito.
  Paragraph 66-71

- Heroin Deliveries to Sanchez at 270 Fairmount Street, Fitchburg, MA.
  Paragraph 72-76

- Heroin Sales from Santiago to Agosto.
  Paragraph 77-82

- Santiago's Drug Transactions with Torres.
  Paragraph 83-91

- Santiago's Delivery of 10 Grams of Heroin to Torrado
  Paragraph 92-106

- Santiago's Dealings with Tavo.
  Paragraph 107-110

- Santiago's Trips to Brooklyn
  Paragraph 111-120

- Couchman reports that Special Agent Willoughby observed Santiago leave 264 Mechanic Street on August 18, 2004 and drive to 270 Fairmount Street Fitchburg MA, where Sanchez lived. No where in the affidavit does either Couchman or Willoughby indicate that the defendant was carrying anything when he entered the Fairmount residence.
  Paragraph 73

- On July 2, 2004 Couchman reported that Sgt. James Trudell observed Santiago leave 264 Mechanic Street and drive to Lowell.
  Paragraph 80

- On June 30, 2004, Santiago left 264 Mechanic Street and traveled to the Mini Self Storage at 3 Foundy Street, Lowell, MA.
  Paragraph 84

- On September 16, 2004, the GPS device on the Santiago minivan indicated that Santiago left his residence in Leominster and traveled to Brooklyn.
  Paragraph 112

Not one of the assertions in Couchman's affidavit relates to drug trafficking activity at 264 Mechanic Street, nor do any of the reasonable inferences that could be drawn establish any more than that Julio Santiago lived there. Notably absent are assertions, supported by facts, that Santiago was seen leaving Mechanic Street with a package or that his clothing appeared to evidence bulk, consistent with packages or even that extraordinary means were being employed at the premises to guard against uninvited visitors. The affidavit records trips to Brooklyn whose obvious purpose would be to suggest that Santiago was purchasing heroin at that time. Nonetheless, no report is made that the defendant entered his home carrying mysterious packages from a drug laden vehicle. Indeed, not one single fact in the entire affidavit associates 264 Mechanic Street with drug activity.

Searches of the dwelling house were the special object of the founder's concern about threats to ordered liberty. Monroe vs. Pape, 365 US 167 (1961) (dissent of Frankfurter J.); Frank vs. Maryland, 359 US 360 (1958); Jones vs. United States, 357 US 493 (1958) ; Wolf vs. Colorado, 338 US 25 (1948); Untied States vs. Curzi, 873 F.2d 1432 (CA1 1989).

In Frank, Mr. Justice Frankfurter wrote for the majority and pointed out,

> In years prior to the Revolution leading voices in England and the Colonies protested against the ransacking by Crown officers of the homes of citizens in search of evidence of

> crime or of illegal imported goods. The vivid memory by
> the newly independent Americans of these abuses produced
> the Fourth Amendment as a safeguard against such arbitrary
> official action by officers of new Union..........

The Fourth Amendment was, thus, a response to general warrants and writs of assistance and was intended to protect the people from the unlimited authority of law enforcement officials who sought to search almost anywhere at any time. See United States vs. Ferrara, 771 F. Supp. 1266 (D. Mass. 1991).

Search warrants may be issued upon a showing of probable cause. United States vs. Barnett, 989 F.2d 546 (1st Cir. 1993); United States vs. Spinosa, 982 F.2d 620 (1st Cir. 1992); United States vs. Buouvalas, 970 F.2d 937 (1st Cir. 1992); United States vs. Nocella, 849 F.2d 33 (1st Cir. 1988). The probable cause standard does not require the officer's conclusion to be ironclad or even highly probable. The conclusion that probable cause exists, however, must be reasonable. See Texas vs. Brown, 460 US 730 (1983); United States vs. Feliz, 182 F.3d 82 (1st Cir. 1999); United States Procopio, 88 F.3d 2 (1st Cir. 1996).

In determining whether the government has made a showing of probable cause, the reviewing court must examine the "totality of circumstances," see Illinois vs. Gates, 462 US 213 (1983); United States vs. Nocella, supra, and evaluate the veracity and reliability of any informants and the basis of their knowledge. Untied Sates vs. Figueroa, 818 F.2d 1020 (1st Cir. 1987); United States vs. Ciampa, 793 F.2d 19 (1st Cir. 1986). Mere affirmation of belief or suspicion is not enough to support a finding of probable cause and an affidavit stating only that the officer believes that certain contraband is at a specified place will not support the issuance of a warrant. Nathonson vs. United States, 290 US 41 (1933), Giordenelo vs. United Sates, 357 US 480 (1957); United States vs. Salvucci, 599 F.2d 1094 (1st Cir. 1979); Rosencranz vs. United

States, 356 F.2d 310 (1st Cir. 129666). Probable cause exists if the facts and circumstances within the agent's knowledge are sufficient to warrant a man of reasonable caution to believe that the contraband is at a specified place. United States vs. Wiseman, 814 F.2d 826 (1st Cir. 1987); United States vs. Baldaschino, 762 F.2d 170 (1st Cir. 1985); Draper vs. United States, 358 US 307 (1959). The warrant traditionally has represented an independent assurance that a search will not proceed without probable cause to believe that a crime has been committed and that the person or place named in the warrant is involved in the crime. Shadwick vs. Tampa, 407 US 345 (1942); United States vs. Schaefer, 87 F. 3d 562 (CA 1 1996); United States vs. Aguirre, 839 F.2d 854 (CA 1 1988).

The Fourth Amendment imposes strict requirements that must be met before a warrant may issue, in order to protect individuals from intrusive government searches pursuant to general warrants. United States vs. Leoncio Diaz, 841 F.2d 1 (1st Cir. 1988). Specially, two conclusions necessary to the issuance of the warrant must be supported by substantial evidence: (1) that the items are, in fact, seizeble by virtue of being connected with criminal activity, and (2) that the items will be found in the place to be searched. United States vs. Leoncio Diaz, supra; W. LaFave & J. Israel, Criminal Procedure, Sec. 3.3 (1984) [(quoting Comment 28 U. Ch. L Rev. 664 (1961)].

The affidavit, therefore, must contain facts which establish a nexus between the place to be searched and the evidence sought. United States vs. Salvucci, supra, Rosencranz vs. United States, supra; United States vs. Laury, 985 F.2d 1293 (5th Cir. 1993). This may be established through normal inferences which develop from either the officer's personal observations, United States vs. Raborn, 872 F.2d 589 (5th Cir. 1989), or from an affiant's experience in that regard. United States vs. Freeman, 685 F.2d 942 (5th Cir. 1982).

The fact that there is probable cause to believe that a person has committed a crime does not automatically give the police probable cause to search his house for evidence of that crime. United States vs. Freeman, supra.

In order for the premises to be subject to the normal inference that the suspect is hiding his goods at his home, the affiant must establish a nexus between the premises and the activity by reciting evidence that the defendant used the premises or that an informant reported that he was using it in that fashion.

In the alternative, probable cause could have been established by reciting the officer's experience in this regard so that the issuing court would have had more than his assertion that traffickers hide money and records in their homes. If the law permitted searches on the basis of this kind of unsupported assertion, there would be no limit on where unrelated drug activity would permit officers to search. It would, in effect, emasculate the protections afforded by the Fourth Amendment against unreasonable searches and seizures.

For evidence to avert suppression, see generally Mapp vs. Ohio, 367 US 643 (1961), the warrant application must normally demonstrate probable cause to believe that a particular person has committed the crime -----"the commission element" and that enumerated evidence relevant to the probable criminality likely is located at the place to be searched----"the nexus element". United States vs. Zayas-Diaz, 95 F.3d 105 (1st Cir 1996); United States vs. Fuccillo, 808 F.2d 173 (1st Cir ), cert. denied 482 US 905 (1987). The issuing magistrate ordinarily considers only the facts set fourth in the supporting affidavit accompanying the warrant application. Zayas-Diaz at 111; See e.g. Whitely vs. Warden, Wyo. State Penitentiary, 401 US 560 (1971); Aguilar vs. Texas, 378 US 108 (1964); United States vs. Klein, 565 F.2d 183 (1st Cir 1977). Under the probable cause standard the "totality of circumstances disclosed in the supporting affidavit must

demonstrate a fair probability that contraband or evidence of crime will be found in a particular place". Illinois vs. Gates, 462 US 213 (1983); United States vs. Zayas-Diaz, supra at 111; United States vs. Bucuovalas, 970 F.2d 937 (1st Cir 1992); cert denied 507 US 959 (1993).

In Zayas-Diaz the defendant argued that the affidavit did not sufficiently connect Zayas and 16 Holbrook Road. The court, however, held that there was adequate support for the issuing magistrates common sense probable cause determination that the Zayas residence was the drug base and had been visited by the second CI. The affidavit in this case furnishes no basis to conclude that any drug trafficking activity was taking place at 264 Mechanic Street.

Cases in which courts have found that probable cause exists, generally involve substantially more than a momentary, random or apparently innocent association between the defendant and the known criminal activity. United States vs. Cleveland, 106 F.3d 1056 (1st Cir 1997); United States vs. Martinez-Molina, 64 F.3d 719 (1st Cir 1995); See also Florida vs. J.L, 529 US 266 (2000). The cause necessary to make a thing "probable" is determined under an objective standard. Therefore, an affidavit is sufficient only when it demonstrates in some trustworthy fashion the likelihood that an offense has been committed and that there is sound reason to believe that a particular search will turn up evidence of it. United States vs. Genao, 281 F.3d 305 (1st Cir 2002); United States vs. Link 238 F.2d 106 (1st Cir 2001); United States vs. Cleveland, 106 F.3d 1056 (1st Cir 1997); United States vs. Schaefer, 87 F.3d 562 (1st Cir 1996).

In other words the Fourth Amendment requires that the supporting affidavit set forth facts sufficient to allow a neutral magistrate to reasonably conclude that the property sought is located on the premises. United States vs. Khounsavank, 113 F.3d 279 (1st Cir 1997); United States vs. Salvucci, 599 F.2d 1094 (1st Cir 1979).

In <u>United States vs. Rosarro</u>, 918 F. Supp 524 (DRI 1996) the government argued that it was permissible for a search to be conducted at premises where the defendant was seen on one occasion, but where a government agent opined that drugs would be found, based on his knowledge of the behavior and practices of narcotics dealers.

The affidavit in the instant case supplies not a single fact to support the conclusion that any drug trafficking activity was taking place at 264 Mechanic Street, or that items were likely to be found there because of the affiants experience. In fact all the information supplied to the magistrate points elsewhere.

The court in <u>Rosario</u> suppressed because it could find no "factual nexus" between the property and any illegality, and, accordingly concluded that the affidavit did not provide a substantial basis for concluding that probable cause existed to search the premises. Id 531.

Because the affidavit establishes no nexus between 264 Mechanic Street and any illegality, this evidence should be suppressed. To hold otherwise would allow the government to enter any premises the defendant occupied, visited or even passed trough, and search for evidence of a crime.

Respectfully submitted
By his attorney
Julio Santiago,

John F. Cicilline, Esquire (#0433)
381 Atwells Avenue
Providence, RI 02909
Office 401 273 5600
Fax 401 454 5600

## CERTIFICATION

I, the undersigned hereby certify that I caused to be deliver a true copy of the within on this the 6th day of April, 2005 to Denise Jefferson Casper, AUSA, to the US Attorney's Office, John Joseph Moakley United States Courthouse, 1 Courthouse Way, Suite 9200, Boston, MA 02210.