UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| V. | ) | CR No. 04-CR-10336 NMG |
| | ) | |
| **JULIO SANTIAGO** | ) | December 6, 2006 |

**MEMORANDUM IN SUPPORT OF SENTENCING**

The governments memorandum in support of sentencing makes two assertions about the defendant Julio Santiago, that he contests. In the first it argues that Santiago is responsible for between three and ten kilograms of heroin, and in the second, the government, describes the defendant as an organizer or leader of a heroin distribution network of five or more participants. (gov. memo pg. 17).

**1.**

The penalty for a controlled substance conviction is determined by the amount of drugs properly attributable to the defendant. United States v. Jimenez-Martinez, 83 F.3d 488 (1st Cir. 1996); United States v. Lindia, 82 F.3d 1154 (1st Cir. 1996); United States v. Campbell, 61 F.3d 976 (1st Cir. 1995).

The governments burden at this hearing requires it to prove drug quantity by a preponderance of the evidence. United States v. Wihbey, 75 F.3d 761 (1st Cir. 1996); United States v. Lombard, 72 F.3d 170 (1st Cir. 1995); United States v. Sepulveda, 15 F.3d 1161 (1st Cir. 1993). To determine the drug quantity attributable to a particular defendant the court looks to the quantity of drugs associated with the count of conviction plus all the relevant conduct that was part of the same scheme or plan as the offense of

conviction. United States v. Marrero-Ortiz, 160 F.3d 768 (1st Cir. 1998); United States v. Sklar, 920 F.3d 107 (1st Cir. 1990).

Where no drugs have been seized, or as in this case, where all the drugs are not seized the guidelines instruct the District Court to approximate the amounts involved, see U.S.S.G. 2D1.1 comment (note 12) and the Circuit Court will uphold such an approximation as long as it represents a reasoned estimate of the quantity involved. United States v. Rodriguez, 162 F.3d 135 (1st Cir. 1998); United States v. Webster, 54 F.3d 1 (1st Cir. 1995); United States Whiting, 28 F.3d 1296 (1st Cir. 1994). Although the sentencing court may rely on reasonable estimates and averages in arriving at its drug quantity determination, its probable accuracy must be founded on adequate indicia of reliability, United States v. Rivera Maldonado, 194 F.3d 224 (1st Cir. 1999); United States v. Webster, supra, and demonstrable record support. United States v. Marrero-Ortiz, 160 F.3d 768 (1st Cir. 1998); United States v. Welch, 15 F.3d 1202 (1st Cir. 1993). It may not be predicated upon conclusory prosecutorial assessments. See Marrero-Ortiz at 779; United States v. Miele, 989 F.2d 659 (3d Cir. 1993). In Rivera-Maldonado, the court rejected the PSR estimate, and the estimate of a DEA trial witness whose assertions were not supported by any foundation. In doing so the court noted that conclusory estimates can undermine the reasonable reliability essential to a fair sentencing system. (citing Sepulveda, supra at 1198.) In fact the Rivera-Maldonado court held that because drug quantity has a dramatic leveraging effect "special care must be taken to ensure that particularized drug type quantity findings are predicated on reliable information, and where significant uncertainty exits, that those findings err on the side of caution." Citing

United States v. Eke, 117 F.3d 19 (1st Cir. 1997); United States v. Sklar, 920 F.2d 107 (1st Cir. 1990).

The government's memorandum attempts to assign weights to the defendant by discussing telephone conversations, readings on cellular telephones and seizures. What the government, however, is unable to do is establish whether the heroin in a telephone conversation is different from the heroin later being discussed by others or whether it is different from the heroin associated with the cell phone readings or the seizures. And although its burden does not require absolute certainty, it does need to support probable accuracy founded on adequate indicia of reliability. Simply discussing an amount or seeing it on a cell phone reading does not necessarily mean that it was actually delivered, and the governments asseverations about that do not carry the day. In fact, in the absence of an actual seizure the governments burden would seem to require at least a survellied transaction before it could fall into the category of drugs that can be considered attributable to the defendant. Moreover, even if the court were to give the governments offering guarded credence, the totals assigned to the defendant, with record support, would not meet the 3 to 10 kilo estimate.

**2.**

The guidelines were adopted to enhance the ability of the criminal justice system to reduce crime through an effective fair sentencing system; and to provide uniformity in sentencing by narrowing the wide disparity in sentences imposed by different federal courts for similar criminal conduct by similar offenders. U.S.S.G. Manuel, Introduction and General Application Principles, 1A1.1; Mistretta v. United States, 488 US 361

(1989); United States v. Snyder, 136 F.3d 65 (1st Cir. 1998); United States v. Labonte, 70 F.3d 1396 (1st Cir. 1995).

The guidelines, however, were not intended to discontinue the courts historical practice of considering the relevant circumstances of the defendant's real conduct. United States v. Cruz, 120 F.3d 1 (1st Cir. 1997) (en banc); United Sates v. Lombard, 72 F.3d 170 (1st Cir. 1995); United States v. Jackson, 3 F.3d 506 (1st Cir. 1993); see generally, Stephen Breyer, The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest, 17 Hofstra L. Rev. 1 (1988).

As now Justice Breyer noted, the Guidelines evince a compromise between a pure "charge offense" system in which sentences are determined based solely upon conduct of which a defendant is convicted, and a "real offense" system in which sentences are fashioned in view of all relevant mitigating and aggravating factors surrounding the defendants conduct. id; United States v. Lombard, supra.

In the process of achieving that objective the primary goals of "certainty, uniformity and fairness" maintain their position as essential ingredients of the sentencing process. United States v. Unger, 915 F.2d 759 (1st Cir. 1990); cert denied, 498 US 1104 (1991); United States v. Mocciola, 891 F.2d 13 (1st 1989). In this case the addition of four points for a leadership role offends the intent of the guidelines and results in sentence disparity.

The determination of a defendants role in an offense is heavily dependent on the facts of the particular case, United States v. McLean, 409 F.3d 492 (1st Cir. 2005); United States v. May, 343 F.3d 1 (1st Cir. 2003); United States v. Funtes-Moreno, 895 F.2d 24 (1st Cir. 1990); United States v. Wright, 873 F.2d 437 (1st Cir. 1989), and requires the

District Court to draw inferences from a variety of data including information in the pre-sentence report and the defendants statements and demeanor at the sentencing hearing. United States v. Herrera, 878 F.2d 997 (7th Cir. 1989); United States v. Mejica-Orosco, 867 F.2d 216 (5th Cir. 1990). It is a mixed fact-law question. United States v. Joyce, 70 F.3d 679 (1st Cir. 1995); United States v. Diaz-Villafane, 874 F.2d 43 (1st Cir. 1989).

The guidelines themselves do not specifically define "organizer, leader, manager or supervisor," but the commentary to the guidelines provides some basis for discerning when an upward adjustment for an aggravated role under 3B1.1 is appropriate. United States v. Ventura, 353 F.3d 84 (1st Cir. 2003); United States v. Tejeda-Beltran, 50 F3d 105 (1st Cir. 1995); United States v. Fuller, 897 F.2d 1217 (1st Cir. 1990).

First, the comments clearly indicate that section 3B1.1 is intended to apply only to criminal activity engaged in by more than one participant. United States v. Soto Beniguez, 356 F.3d 1 (1st Cir. 2003); United States v. Morrero-Ortiz, 160 F.3d 768 (1st Cir. 1998). United States v. Abitoye, 923 F.2d 221 (1st Cir. 1991). That is, the participants must be associated with one another in some structural setting. Their relationship to one another must establish a hierarchy. That afterall is what the guideline intends to penalize.

Second, the evidence must show that the defendant exercised control over or was otherwise responsible for organizing the activities of other individuals in committing the crime. United States v. Laboy, 351 F.3d 578 (1st Cir. 2003); United States v. Lopez-Lopez, 295 F.3d 165 (1st Cir. 2002); United States v. Veilleux, 949 F.2d 522 (1st Cir. 1991). This requirement re-inforces the interpretation of the guideline which the defendant urges. And third, the four point enhancement is proper where the activity

involved five or more participants. United States v. Martinez-Medina, 279 F.3d 105 (1st Cir. 2002); United States v. Li, 206 F.3d 78 (1st Cir. 2000).

Understood as a penalty for group or gang participation, the guideline provides for increases based on individual culpability. For a leadership or managerial role the enhancement requires some degree of control or organizational authority over others. United States v. Cali, 87 F.3d 571 (1st Cir. 1996); United States v. Fuller, 897 F.2d 1217 (1st Cir. 1990). Managerial status generally attaches if there is evidence that the defendant, in committing the crime, exercised control over or was otherwise responsible for overseeing the activities of others, United States v. Webster, 54 F.3d 1 (1st Cir. 1995); United States v. Munoz, 36 F.3d 1229 (1st Cir. 1994); United States v. Savoie, 985 F.2d 612 (1st Cir. 1993), or if he recruited others. United States v. Scott, 270 F.3d 30 (1st Cir. 2001).

The Court may draw on all relevant conduct when determining whether the defendant was an organizer or leader for the purposes of the guidelines. United States v. Laboy, supra; United States v. Ruiz-Batista, 956 F.2d 351 (1st Cir. 1992). It may also consider the exercise of decision making authority, the nature of his participation in the commission of the offense, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the alleged activity and the degree of control and authority exercised over others. U.S.S.G. 3B1.1 cmt. (N4); United States v. Soto Beniquez, 356 F.3d 1 (1st Cir. 2003); United States v. May, supra; United States v. Conley, 156 F.3d 78 (1st Cir. 1998); United States v. Graciani, 61 F3d 70 (1st Cir. 1995).

In this case the governments presentation established that the defendant was a supplier to others. No evidence supported the fiction that he exercised control over others, that he exercised decision making authority over their activities, that he claimed a right to a larger share of the fruits of the crimes or that he exercised control or authority over others. His role plain and simple was that of a supplier not an overlord of their activities. And the guideline was designed to penalize a person not for his sales skills but for being the leader of an organization who reaped the larger percentage of profits. It is an effort to discourage criminal leadership; and that role has not been established for this defendant, by the government.

/s/ *JOHN F. CICILLINE*
_____
John F. Cicilline, Esquire #0433
Attorney for (Julio Santiago)
Cicilline Law Office
381 Atwells Avenue
Providence, RI 02909
Office 401 273.5600
Fax 401 454.5600
jfcicilline387@aol.com

**CERTIFICATION**

I hereby certify that on December 06, 2006 a true copy of the above document was served upon all attorneys of record by ECF filing.

/s/ *JOHN F. CICILLINE*