# United States District Court
# District of Massachusetts

UNITED STATES OF AMERICA,

    v.                            CRIMINAL. NO. 04-10336-NMG-12

                                CIVIL ACTION NO. 10-10835-NMG

JULIO CARRION SANTIAGO,
      Defendant.

*REPORT AND RECOMMENDATION ON PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN CUSTODY (#522) AND ON PETITIONER'S MO[TION] FOR AN EVIDENTIARY HEARING BASE[D] ON THE GOVERNMENT'S <u>SURREBUTTAL BRIEF (#545)</u>*

COLLINGS, U.S.M.J.

*I. Introduction*

The *pro se* petitioner Julio Carrion Santiago ("petitioner" or "Santiago") seeks to vacate his conviction pursuant to 28 U.S.C. § 2255. Santiago was convicted after a ten-day jury trial of heroin-related offenses and was sentenced to 248 months' imprisonment. His conviction was affirmed on appeal. *See United States v. Santiago*, 560 F.3d 62 (1 Cir.), *cert. denied*, 130 S. Ct. 140 (2009). The government urges dismissal of the petition. For the reasons that follow, the Court shall recommend that the motion under 28 U.S.C. § 2255 be denied.

## II. Factual Background

The Court draws the following facts from the First Circuit's opinion affirming Santiago's conviction. Santiago was arrested along with several others in connection with his participation in a heroin distribution organization in Lowell, Massachusetts. The year-long investigation was led by the Drug Enforcement Agency ("DEA"), with the assistance of state and local police. During the investigation, DEA agents "tracked Santiago's van with a GPS unit and conducted visual surveillance of it; conducted court authorized wiretaps of cell phones of the defendants; tracked and observed transactions among the defendants revealed by cell phone conversations; and ultimately seized

Santiago's van (seizing concealed drugs) and searched his residence and those of [codefendants (seizing drugs and paraphernalia)]." *Santiago*, 560 F.3d at 64-65. In searching Santiago's residence, officers uncovered the following: "a drug press in the hallway between two apartments–one of them Santiago's [and the other one vacant]–and, in the attic above the press, a 9 millimeter gun and an ammunition clip along with heroin, a digital scale, a bag with silencers and a magazine for a smaller weapon." *Id.* at 65. The officers "found additional paraphernalia inside Santiago's apartment." *Id.*

### III. Procedural Background

A jury found Santiago guilty of conspiracy to distribute heroin and to possess heroin with intent to distribute under 21 U.S.C. §§ 846, 841(b)(1), and of possessing firearms in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c), and of possession of unregistered firearms under 26 U.S.C. § 5861(d). The jury also found that the conspiracy involved at least one kilogram of heroin.

On direct appeal, the First Circuit rejected Santiago's claims disputing the sufficiency of the evidence to support the jury's drug quantity finding and the jury's determination that the gun found in the attic could be attributed to Santiago.

On May 10, 2010, Santiago filed the present Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Custody (#522), along with a Memorandum of Law and Facts in Support (#522-1). He asserts several claims: 1) trial counsel was ineffective in failing to introduce evidence that would have called into question Santiago's constructive possession of the firearm located in the attic; 2) trial counsel was ineffective in failing to subpoena the analyst who had prepared the laboratory report concerning the amount and type of drugs; and 3) trial counsel labored under a conflict of interest that affected the adequacy of representation. Santiago also appears to raise a direct challenge to his sentence, and to contend that the prosecution failed to disclose certain information in violation of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963).

On June 7, 2010, the government filed its Response to Defendant's Motion Pursuant to 28 U.S.C. § 2255 and Request for Summary Dismissal (#526), with exhibits. On July 30, 2010, Santiago filed his Rebuttal to Government Request for Summary Dismissal of Petitioner's 28 U.S.C. §§ 2255 [sic]. (#539) With leave granted, the government filed its Surrebuttal to Petitioner's Rebuttal to Government's Request for Summary Dismissal of 28

U.S.C. § 2255 Petition. (#544) The motions are thus ripe for disposition. Also pending are Santiago's motion for an evidentiary hearing (#545) and the government's opposition (#547).

## IV. Discussion

### A. Claims of Ineffective Assistance of Counsel

Santiago's ineffective assistance of counsel claims are governed by the familiar standard set out in *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). To succeed on a Sixth Amendment claim of ineffective assistance of counsel, a defendant must establish that his "counsel's representation 'fell below an objective standard of reasonableness'" and that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Moreno-Espada v. United States*, 666 F.3d 60, 64 (1 Cir., 2012) (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1482 (2010) (further internal quotation marks and citation omitted). Under *Strickland*, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. With regard to the performance aspect of the standard, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance,' and [a petitioner] 'must overcome the presumption that . . . the challenged action might be considered sound trial strategy.'" *Tevlin v. Spencer*, 621 F.3d 59, 66 (1 Cir., 2010) (quoting *Strickland*, 466 U.S. at 689) (further citation and internal quotation marks omitted) (third alteration in original). Accordingly, "a lawyer's performance is deficient under *Strickland* 'only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it.'" *Id.* (quoting *Knight v. Spencer*, 447 F.3d 6, 15 (1 Cir., 2006)).

Santiago raises two ineffective assistance of counsel claims. First, he contends that his trial counsel was ineffective in failing to introduce evidence at trial that would have established that Santiago was innocent of the weapons offenses. Second, he faults his counsel for failing to subpoena the government's chemist who was responsible for preparing the report used to establish the nature and quantity of the drugs seized. The Court considers these two claims.

1. *Alleged Failure to Introduce Evidence Challenging Weapons Offense*

Santiago claims that his trial counsel was ineffective in failing to establish certain factual details that, according to Santiago, would have cast doubt on the conclusion that Santiago constructively possessed the weapon that was seized

during a search of Santiago's apartment building.

The following details, drawn from the trial transcripts, provide context for the claim. At trial, David Napolitano ("Napolitano"), the state trooper who assisted in executing a search warrant at Santiago's apartment, testified that when he went through the back door of the apartment to a hallway, he "noticed there was a doorway to an attic space with a [drug] press underneath." (#464, Trial Tr. VI:111) He further testified that he entered the attic by standing on the press and lifting himself up into the attic. (*Id.* at 114) Once in the attic, Napolitano testified that it was dark, and that in searching "right around the hole" to the attic, he lifted up the insulation and found a 9 millimeter gun with a clip inside it. (*Id.*) Napolitano stated that he found the gun "within 12 inches" from the opening to the attic and that "[i]f you had reached up, you could grab it. If I had known it was there, I could have reached up and grabbed it." (*Id.* at 115) Likewise, he testified that he found a plastic bag in the attic that contained several fingers of heroin, three digital scales, a bag containing tools, and two or three silencers, all located just inside the access panel under the insulation. (*Id.* at 116-117, 125) He also testified that during the initial search the attic was lit only from light coming from the hallway, but that

eventually a light was turned on in the attic. (*Id.* at 118-119)

In addition, Dennis Barton ("Barton"), a DEA agent who also assisted in executing the search warrant, testified, among other things, that during his search of Santiago's apartment he found finger press dies used to compress drugs, a number of cell phones, a portable money counter, and a spiral notebook containing a number of names and phone numbers (*Id.* at 140-141, 145, 147) In addition, Barton testified that the building manager said that the lights to the attic were on the same circuit breaker as the vacant apartment next door, so that access to the lights was through the circuit breaker in the vacant apartment. (*Id.* at 170) Finally, Barton testified that the insulation looked "fairly new." (*Id.* at 172)

Seizing on these details, Santiago now contends in his habeas petition that his counsel was ineffective in failing to argue that the facts surrounding the location of the gun suggested Santiago's innocence. In particular, he says that his counsel should have probed more deeply into the circumstances surrounding the installation of the insulation–who installed it, and when, and whether the landlord gave the key to workers and left them unsecured. He suggests that if counsel had done so, "this would have given the jury something to think about."

8

(#522-1 at 3) He also appears to suggest that the location of the light switch in the vacant apartment indicates that Santiago did not control the attic space.

This speculative argument fails to establish constitutional ineffectiveness under *Strickland*. As the First Circuit observed:

> The jury knew about Santiago's drug dealing, the proximity of his apartment to the attic, the corresponding paraphernalia in his apartment, the concealment of access to the attic and the absence of others likely to have used the attic. Under these circumstances, the jury was free to reason that the drugs in the attic were part of the conspiracy and that the gun was constructively possessed by Santiago.

*Santiago*, 560 F.3d at 65-66.

Even if the insulation had been recently installed, Santiago does not explain why the jury would not still have been free to infer that Santiago had concealed the gun in the attic after the insulation had been installed–whether two months before or two weeks before. To the extent that Santiago suggests that someone else may have concealed the gun and drugs there, his argument is pure speculation and runs counter to the evidence. In short, Santiago has not established that his counsel was unreasonable in not investigating what appeared to be an unpromising line of attack: that is, defense counsel appears to have made a reasonably strategic decision not to pursue an implausible

9

theory connected to the installation of the insulation. (Notably, defense counsel did question Agent Barton about whether Barton had investigated when the insulation was installed, and was met with Barton's commonsense response about the significance of the insulation: "someone can hide something or put something in an attic in five minutes at any time. It could have been an hour before I got to the apartment as far as I know." [*Id.* at 173].) In addition, given the strength of the government's case, Santiago has not established that but for the purported failure of counsel, the result would have been any different.

Santiago also suggests that the indictment was defective because it charged him with possession of the gun and not constructive possession. This claim is baseless: "To convict a defendant under § 924(c)(1)(A), the government must prove that the defendant (1) committed a drug trafficking crime; (2) knowingly possessed a firearm; and (3) possessed the firearm in furtherance of the drug trafficking crime." *United States v. Vazquez-Castro*, 640 F.3d 19, 25 (1 Cir., 2011). "Possession" under the provision may be "constructive," *id.* at 26, and "constructive possession *is* possession, not a separate predicate act that has to be spelled out in the indictment," *United States v. Rogers*, 41 F.3d 25, 30 n.3 (1 Cir., 1994), *cert. denied*, 515 U.S. 1126 (1995).

The indictment here provided fair notice of the charge.

## 2. Failure to Subpoena Chemist

Santiago next faults his defense counsel for failing to subpoena the government chemist who prepared the reports introduced at trial to establish drug quantity and type. He relies on *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), which held that "certificates of analysis" introduced at trial to establish the results of a forensic analysis performed on seized drugs amounted to testimonial statements, and that the drug analysts who had prepared the certificates were subject to confrontation. *See Melendez-Diaz*, 557 U.S. at 310. The government contends that Santiago may not receive the benefit of the rule announced in *Melendez-Diaz* because *Melendez-Diaz* has not been made retroactive to cases on collateral review. *Melendez-Diaz* was decided on June 25, 2009, and the Supreme Court denied *certiorari* review in Santiago's case on October 5, 2009. Because Santiago's conviction was not yet final when *Melendez-Diaz* issued, non-retroactivity principles are inapplicable and Santiago receives the benefit of the holding in *Melendez-Diaz*. *See Derman v. United States*, 298 F.3d 34, 42 (1 Cir.) (noting that, if conviction is not yet final when Supreme Court announces new rule, then lower courts must apply that rule on

collateral review), *cert. denied*, 537 U.S. 1048 (2002). Thus, the Court must consider the ineffective assistance of counsel claim with *Melendez-Diaz* as its guide.

Still, the government correctly points out that the holding announced in *Melendez-Diaz* does not assist Santiago in this case. Here, the government notified the defendants of its intention to present the expert testimony of Jennifer Chu, a forensic chemist for the DEA who had analyzed the drugs at issue.[1] (*See* #526, Exh. 1, Aff. of William Bloomer ¶ 2) The government advised defense counsel that Chu would testify regarding the tests that she had performed on the drugs that had been seized during the investigation. (*Id.*) All five defense counsel stipulated to the admission of the laboratory reports in lieu of Chu's testimony. (*Id.* ¶ 3) The government correctly points out that the stipulation amounted to a strategic decision, which is virtually unchallengeable. *See United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004) ("As a rule, counsel's decision to stipulate to certain evidence, like his decisions to offer or object to evidence, involves a strategic choice, which is 'virtually

---

[1] This point distinguishes this case from *Melendez-Diaz*, where the state had no intention of calling its expert to testify, and instead offered sworn affidavits from the chemist, which state law allowed as "prima facie evidence of the composition, quality, and the net weight" of the seized drugs. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009) (internal quotation marks and citation omitted).

unchallengeable' if made after thorough investigation.") (quoting *Strickland,* 466 U.S. at 690-91), *cert. denied,* 544 U.S. 990 (2005). Here, the defense theory of the case was not that the drugs were not heroin, but rather that the government had wrongly attributed them to Santiago. The defense would have gained nothing by insisting that the jury hear the details of the tests performed on the drugs. As *Melendez-Diaz* itself observed, in the ususal drug cases "[i]t is unlikely that defense counsel will insist on live testimony [about the nature of the substance] whose effect will be merely to highlight rather than cast doubt upon the forensic analysis. Nor will defense attorneys want to antagonize the judge or jury by wasting their time with the appearance of a witness whose testimony defense counsel does not intend to rebut in any fashion." *Melendez-Diaz*, 557 U.S. at 328 (footnote omitted).

Finally, Santiago has not established a reasonable probability that the result would have been different if defense counsel had refused to stipulate to the laboratory reports. Santiago has introduced no evidence that contradicts the content of the laboratory reports, or that casts doubt on the accuracy of the reports. For these reasons, the Court concludes that this claim lacks merit.

## B. Sentencing Challenge

In a direct challenge to his sentence, Santiago contends that he should not have been subject to both the five-year mandatory minimum on the gun charge under 18 U.S.C. § 924(c)(1)(A)(i) and the mandatory minimum of 120 months under the drug offenses. This claim was not raised on direct appeal, although it could have been, and it can be dismissed on that ground alone. *Knight v. United States*, 37 F.3d 769, 773 (1 Cir., 1994) ("Having bypassed his opportunity to raise the claim on direct appeal, [a petitioner] cannot raise it . . . on collateral attack."). In any event, at the time Santiago filed his petition, First Circuit law foreclosed Santiago's statutory argument, *see United States v. Parker*, 549 F.3d 5, 11 (1 Cir., 2008), *cert. denied*, 129 S. Ct. 1688 (2009); since then, the Supreme Court has squarely addressed and rejected Santiago's statutory argument, *see Abbott v. United States*, 131 S. Ct. 18, 23 (2010) (holding that "a defendant is subject to a mandatory, consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction. . . . He is . . . subject to the highest mandatory minimum specified for his conduct in § 924(c), unless another provision of law directed to conduct proscribed by § 924(c) imposes an even greater mandatory minimum."). For these reasons,

this claim must be dismissed.

### C. *Brady v. Maryland* and Alleged Attorney Conflict of Interest

Santiago's final claim is confusing, but it appears to assert both a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), and a claim that his defense counsel labored under a conflict of interest that undermined Santiago's Sixth Amendment guarantee to effective representation. To place these claims in context, the Court notes that John F. Cicilline (hereafter, "John F.") filed an appearance at the commencement of federal court proceedings against Santiago. Santiago contends in his petition that he retained John M. Cicilline (hereafter, "John M."), the son of John F. Cicilline, to represent him when he was arrested. According to the petition, an officer named Chris Hanson assaulted Santiago during the course of arresting him. Santiago contends that he told his then-defense counsel, John M., that he wanted to bring charges against the officer. According to Santiago, John M. dissuaded Santiago from bringing charges because he was "doing things" with the officer. (*See* # 522-1 at 10). Santiago alleges that John M. then told Santiago that if Santiago paid him (John M.) $75,000, John M. would induce Chris Hanson not to testify at trial. In support of this claim, Santiago has offered a rough translation of what appears to be an

online version of a Spanish language Providence newspaper. (*See* #522-2, Exh. A)

The Court can take judicial notice of the criminal indictment filed against John M. Cicilline in this court on January 4, 2007 for obstruction of justice. *See* Docket No. 07-cr-10008-NMG. He pled guilty on August 26, 2008. John M.'s plea agreement recounts how John M. extracted money from certain of his clients in exchange for John M.'s efforts to obtain a favorable sentence reduction. These events roughly overlap with the time of Santiago's arrest in 2004.

In his habeas petition, Santiago makes a similar allegation: that John M. extracted money from Santiago in exchange for John M.'s inducing officer Chris Hanson not to testify at trial. Based on these allegations, Santiago asserts that the government violated its obligations under *Brady v. Maryland*; Santiago contends that the government must have known of John M.'s criminal activity but failed to disclose it. "Under *Brady*, the government has a duty to disclose evidence in its possession that is favorable to the accused and material to guilt or punishment. Evidence is 'favorable to the accused' if it is either exculpatory or impeaching in nature and 'material' if there is a reasonable probability that, had it been disclosed, the result of the proceeding would have been different."

*United States v. Prochilo*, 629 F.3d 264, 268 (1 Cir., 2011)(citation omitted).

The facts that Santiago alleges do not establish a claim under *Brady*. First, as noted, the docket in Santiago's case indicates that John F. entered an appearance on Santiago's behalf on November 9, 2004, and that John F. represented Santiago at all stages of the proceedings thereafter, including at trial. Santiago does not explain how information about John M.'s criminal activity unrelated to Santiago's case could have been exculpatory or impeaching in Santiago's case or could have had any bearing on the outcome of Santiago's jury trial.

Otherwise, Santiago appears to suggest that the facts alleged establish that John M. labored under a conflict of interest in violation of the Sixth Amendment because he was in cahoots with a prosecution witness. Even assuming that the facts alleged are true, Santiago has not established that the alleged "actual conflict of interest adversely affected his lawyer's performance." *Yeboah-Sefah v. Ficco*, 556 F.3d 53, 73 (1 Cir.) (internal quotation marks and citation omitted), *cert. denied*, 130 S. Ct. 639 (2009). The most that Santiago says about the adverse effect here is that he "was switch[ed] from one partner to another in the same law firm without giving reasons why." (#522-1 at 11) And, in his

rebuttal to the government's response, Santiago cursorily suggests that John F. had a conflict of interest as follows: "It seem[s] that defense counsel was part of the undergraded [sic] justice that occurred by Mr. Cicilline and the agent by the agent not testifying."  (#539 at 9) This unsupported assertion is pure speculation.  Santiago bears the burden of showing that the alleged conflict of interest goes "beyond a 'mere theoretical division of loyalties' and in fact 'adversely affected his counsel's performance.'" *United States v. DeCologero*, 530 F.3d 36, 76 (1 Cir.) (quoting *Mickens v. Taylor*, 535 U.S. 162, 171, 174 (2002)) (footnote omitted), *cert. denied*, 555 U.S. 1005 (2008) and 555 U.S. 1039 (2008).  Because Santiago has made no showing that John F.'s purported conflict of interest adversely affected his performance, this claim fails.

## V. Recommendation

For all the above reasons, I RECOMMEND that petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (#522) be DENIED. I FURTHER RECOMMEND that Petitioner's Mo[tion] for an Evidentiary Hearing Base[d] on the Government's Surrebuttal Brief (#545), be DENIED.

## VI. Review by the District Judge

The parties are hereby advised that any party who objects to these recommendations must file a specific written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1 Cir., 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1 Cir., 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1 Cir., 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1

Cir., 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1 Cir., 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ *Robert B. Collings*
ROBERT B. COLLINGS
United States Magistrate Judge

November 5, 2012.